IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KAZIM OLADOTUN OYENUGA, <br> Plaintiff, <br><br> Vs. <br><br> SAHARA REPORTERS' MEDIA GROUP INC, OMOYELE SOWORE, OLUFEMI OLUSEUN DOMINIC, and AYOKUNLE JAMES GBADEBO, <br> Defendants | Civil Case No.:4:23-cv-00389-ALM-CAN <br><br><br> JURY TRIAL DEMANDED |



FILED
AUG 0 3 2023
Clerk, U.S. District Court
Eastern District of Texas

## FIRST AMENDED COMPLANT

Plaintiff, KAZIM OLADOTUN OYENUGA, pro se, for his complaint against Defendants SAHARA REPORTERS' MEDIA GROUP INC, OMOYELE SOWORE, OLUFEMI OLUSEUN DOMINIC, and AYOKUNLE JAMES GBADEBO, hereby alleges and states as follows:

### INTRODUCTION

1. This is an action by Plaintiff Kazim Oladotun Oyenuga against Defendants Sahara Reporters media Group Inc, Omoyele Sowore, CEO of Sahara Reporters Media Group Inc, Olufemi Oluseun Dominic, and Ayokunle James Gbadebo, ("Defendants"), seeking redress for professional and commercial harm done him, his family, his commercial brand and his business opportunities as a result of several actions including but not limited to false, salacious and offensive statements about Plaintiff published by defendants on saharareporters.com at different times on June 7, 2021, June 8, 2021 and June 17, 2021 respectively and as described below:

   a. http://saharareporters.com/2021/06/07/exposed-how-nigerian-born-pharmacist-kazeem-oyenuga-defrauded-two-men-n67million-us

   b. https://saharareporters.com/2021/06/08/another-man-accuse-son-late-nigerian-gold-merchant-kazeem-oyenuga-n50million-fraud

   c. https://saharareporters.com/2021/06/17/exposed-how-nigerian-born-alleged-fraudster-kazim-oyenuga-listed-dead-man-his-us-company

2. On information and believe, defendants published these statements for the purposes of causing great harm to the professional image and businesses of plaintiff, of gaining tremendous economic benefits through resulting increase in web traffic to the article and accompanying revenue from online advertisement to saharareporters.com

3. Plaintiff has professional pharmacist, pharmacoengineer and pharmaceutical scientist qualifications (BPharm, MSE and PhD degrees). He has over two decades of work experiences as faculty, scientist, retail and hospital pharmacist and most recently as an entrepreneur. He has formulated and/or developed his own brand recognition over a 10 year course of his entrepreneurial career.

4. Due to the publication of the Defendants false statements about Plaintiff, his brands and businesses have lost significant value; Equally major career and business opportunities that were otherwise available to him and his company have been lost and/or substantially impacted.

5. The damage to Plaintiff, which also extends to professional credence and licensing of Plaintiff and his businesses due to the publication of Saharareporter.com online injurious articles, is in multiple million dollars. Plaintiff has had the unique position of being a best-in-class well-known business whose clients trust him to deliver the right quality in multiple products' category. Each of these product categories could have earned multi-million-dollar businesses or relationships over several years.

6. The defendants made the conscious decision to act and publish the injurious and false statements at the time of publication claiming that Plaintiff's business activities were fraudulent and further accused Plaintiff of being a white-collar criminal in plain sight amongst other allegations. Defendants had no basis to make these false and highly malicious and damaging accusations. These claims were unsubstantiated.

7. Before publication, Defendants' publisher made no attempt to contact the Plaintiff or others mentioned in these publications. The defamatory statements reached millions of readers of saharareporters.com and also possibly caused a chain reaction of re-publications of the claims in many other news outlets, websites, blogs and social media which had millions and millions more readers around the world viewing and or reading these false claims.

8. Further, Plaintiff engaged the services of a reputation management company. erase.com on August 8, 2021. who contacted Sahara reporters through their lawyers about these inaccurate publications and requested a removal of the offending and salacious publications. Sahara reporters refused to remove the articles.

9. Sahara reporters conduct in publishing these injurious and salacious materials without due diligence violates The Professional Standards of Journalism ethics. The Society of

Professional Journalists code of ethics states in part that:

    a. An ethical Journalist Acts with integrity
    b. Ethical journalism should be accurate and fair
    c. Journalists should be honest … in gathering, reporting, and interpreting information
    d. Journalists should … verify information before releasing it
    e. Journalists should … use original sources wherever possible
    f. Ethical journalism treats … subjects … as human beings deserving of respect
    g. Journalists should …. balance the Public's need for information against potential harm or discomfort
    h. Journalists should … show compassion for those who may be affected by news coverage
    i. Journalists Should … avoid pandering to lurid curiosity…
    j. Journalists should … consider the long-term implications of the extended reach and permanence of Publications
    k. Journalists should abide by the same high standards Plaintiff expect of orders

10. Defendants' false and defamatory statements about Plaintiff have cost tremendous harm and serious personal, professional and business losses arising from reputation damage for which he seeks compensatory and punitive damages of at least $20 million dollar per defendant.

## PARTIES

11. Plaintiff is an individual resident in Collin County, Plano, Texas at the time of Publication of the false and injurious article.

12. Upon information and belief, defendant Sahara Reporters Media Group Inc is a New York Corporation with its principal place of business at 146 West 29th Street Ste 7e, New York, NY 10001.

13. Upon information and belief, defendant Omoyele Sowore is the CEO of Sahara Reporters Media Group Inc. His contact address is 146 West 29th Street Ste 7e, New York, NY 10001.

14. Defendant Olufemi Oluseun Dominic is an individual of address 3303 Unicorn Lake Blvd Ste. 280, Denton, TX 76210. Defendant was a resident of Denton County at the time of publication.

15. Defendant Ayokunle James Gbadebo is an individual of address 730 W Exchange Parkway Allen, TX 75013. Defendant was a resident of Collin County respectively in Texas at

the time of publication.

## JURISDICTION AND VENUE

16. This court has diversity jurisdiction under 28 USC § 1332, on the basis of there being a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000. Defendant Sahara Reporters Media Group Inc has offices in, and has its principal place of business in New York City; the causes of actions arose out of its saharareporters.com online activities with a global reach. Defendants Olufemi Dominic and Ayodele Gbade both reside in Texas.

17. This Court also has federal question jurisdiction pursuant to 28 U.S.C § 1331 since it involves the violations of 42 U.S. Code § 1985(3).

18. Venue is proper in this district under 28 U.S.C. § 1391(a) and (c), as Plaintiff is subject to personal jurisdiction in this state. Plaintiff and his businesses are domiciled in Collin County, Texas before and at the time Defendants acted and published their articles on June 7, 2021, June 8, 2021 and June 17, 2021 respectively.

## PARTICULARS OF DEFAMATION

19. Saharareporters.com has a monthly visit of 5.4 million with U.S and U.K visitors accounting for 60% of the online traffic

20. Defendants stated in their harmful and/or defamation articles about Plaintiff that

   a. Plaintiff 'has become a menace to the society …;
   b. That he had "channeled his focus, knowledge, and passion to defrauding personal individuals, wholesale vendors, insurance companies, landlords, employees. He has carved a niche for himself as a serial fraudster."
   c. "He is an impostor, pretending to operate pharmacy practices to the society. However, his entire business motive is to defraud, steal and destroy another innocent,"
   d. "Olufemi Dominic who was allegedly defrauded of $34,000 in 2020 told SaharaReporters …. accused Kazeem's mother, Saudat Oyenuga of being an accomplice in his 'fraudulent business operations;
   e. "Even though, his flamboyant lifestyles still reinforce the fact that he has the means to pay, he deliberately chose not to pay back. He later boasted in a text message to me (Olufemi Dominic) that he had been defrauding people for ages."
   f. "This declaration forced me to do some background checks into his dealings and it was then I found out that Kazim is a serial fraudster that has somehow getting away with defrauding people, financial institutions, pharmaceutical drug

wholesalers, employees, landlords, etc."

g. "He is still on the street as a white-collar criminal, walking conveniently, living flamboyantly. I recently realised that he just bought two exotic Range Rover cars (over $200, 000) for himself and wife. I then decided to raise delegates to discuss my concerns with his family members from his father side, having found out that his mum and siblings are with him in the business of defrauding people."

h. "This infuriated Kazim for being exposed as a fraudster to his family members. His concern and desperation of his escapades as a fraudster forced him to hire off duty police officers, in an unprecedented and unprofessional manners to kidnap my younger brother that resides in Osogbo, Osun state, believing that would help instill fear to silence me."

i. "Also speaking to SaharaReporters, another US-based pharmacist who preferred to remain anonymous claimed Kazim defrauded him of $100,000."

j. "I was defrauded of $100,000 by him. I know someone he defrauded of $250,000 as well. He has mastered the art of his business, by registering and opening multiple pharmacy businesses either simultaneously or one after the other."

21. In a second defamation article published on June 8, 2021 and titled: Another Man Accuse Son Of Late Nigerian Gold Merchant, Kazeem Oyenuga Of N50 million Fraud; Ayokunle Gbadebo said: "Kazim's former pastor waded into the matter in a meeting where he pleaded to pay back the money but stopped attending the church."

22. Ayo further alleged that:

a. "I got to meet him through a mutual friend who is also a pharmacist (. My friend invited me to partner in a joint venture pharmacy related business which Kazim happened to be coordinating and according to the pitch Kazim gave; 'this is a lifetime opportunity that Plaintiff cannot afford to miss'. He gave a lengthy proposition of how this existing practice needed Plaintiff's pharmacy expertise and compounded drugs and other services geared towards the treatment of their patients," he told SaharaReporters.

b. "He sets up the business in some of the affluent and upscale neighborhoods around Dallas (DFW) metroplex. A few of the businesses Kazim had operated are: Imedsplus Integrative, Pharmacompoundia, Care Tecture LLC, Medicineers at USPharmaceutica (https://www.usmedicineers.com/) etc… The model is to just create a persona of and façade of doing legitimate pharmacy business to potential victims. He then combines this façade with his presentation of his impressive academic

       backgrounds to cajole his victims to engage in business relationships with him."

    c. "His popular slogan every time he engages a new victim in business is "I want you to have a skin in the game". The moment his victims get on board through their financial commitments is when every prospect and potential for success becomes the victim's nightmare."

    d. "He would change the story that the business plans had failed to work out as planned. Amongst others"

23. These statements by defendants quoted in line items 19a to 21d and published by saharareporters.com are false.

## FACTS

24. Sahara reporters Media Group, Inc online publication (saharareporters.com) continued the false narrative and published Olufemi Oyatoogun Dominic's claim that Plaintiff scammed him with a non-existent pharmacy. It is not only a blatant lie, but sheer electronic harassment and defamation of Character rooted with deliberate intent to injure. It is also apparent that he probably intends to cause harm when he told a tale that accuses an entire family – my mother and siblings – of scamming him. This is as damaging as any physical injury when Sahara reporter repeatedly gave the story a wide circulation through its social media platforms with the intent to cause damage to PLAINTIFF at work, among Plaintiffs peers, friends and family. To the contrary, and as with people with these tendencies, he got it mixed up in his head again. As WRITTEN below, it is not us but his sibling and relatives from his father's house – The Oyatoogun family- that are of questionable morals. Plaintiff is equally unsure how defendant concluded that Plaintiff's mother is his spiritual protector. Such is the nature of falsity which can only be ascribed to spiteful and sometimes raven dangerous behavior. They do not want justice, so they resorted to the tools of brutal assault.

25. Here, focus is on the individual issues that arose from interactions with Olufemi Oyatoogun Dominic and his wife, Maria Dominic and Ayo Gbadebo, his co-accuser. This is the raison d'etre of their physical and electronic harassment with intent to cause injury, including physical and/or psychological and emotional trauma for Plaintiff and family peers and friends.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Defamation: Libel

**(Against SaharaReporters, Omoyele Sowore, Femi Oyatoogun Dominic and Ayo Gbadebo)**

26. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 25, inclusive, as though set forth in full herein.

27. Defendants defamed Plaintiff in a New York based online publication with intent to cause irreparable damage to Plaintiff's Personal and Business Reputation and Economy.

28. Defendants alleged, amongst others, in their online publication that Plaintiff's intent for setting up a quality operation was to scam. Defendants' actions are another form of electronic harassment and character assassination to annoy and/or embarrass Plaintiff.

29. Olufemi Oyatoogun Dominic and his co-accuser Ayo Gbadebo (a pharmacy co-owner and pharmacist respectively) knowingly defamed Plaintiff when they conspired with saharareproters.com in a communication to an online audience that threatens and conveys statements that has caused harm to Plaintiff, his family, and maligned his professional image, standing and economic activity. *See* paragraphs 19a to 21d above.

30. Referencing one of the allegations by defendants, Plaintiff chose the proper location fit for his services and invested in a quality operation at the outset not because he wanted to impress anybody or, as they alleged, to 'scam' anyone. Plaintiff was trained on, and understand how to build, equip and operate a pharmaceutical production facility fit for making medicines of small or large molecules, including hazardous products and biomolecules. Indeed, when the Texas Pharmacy Board inspector came for the approval inspection of Plaintiff's sterile facility in 2013, he opined that his facility was best in class amongst several independent pharmacies he had seen so far.

31. Plaintiff was also fortunate to have well trained staff and all his injectable product categories passed inspection when tested for sterility and endotoxins 99.99% of the time. Equally, Plaintiff did not have people getting sick from a contaminated product. He had to invest in proper equipment for producing on a granularity of one for any prescribed, off label and/or off patent FDA approved drug product in a variety of dosage forms including injectables. Plaintiff's facility was also equipped to make hazardous sterile products. Very few facilities could. Plaintiff was probably in the top 5% of places physicians trust to make the right quality products for their

patients. At some point, some pharmacists in the DFW area who are highly knowledgeable in sterile compounding have gone through Plaintiff's lab. All of Plaintiff's equipment and fixtures were fully paid for. Plaintiff operated within the boundaries of his profession to maintain his Professional licenses in good standing.

32. It was therefore not surprising when a pharmacist, FA (Ayo Gbadebo's friend) approached Plaintiff to partner with him on a project to supply chemo drugs and admixtures for patients of a local oncology practice. His (FA's) facility was not equipped, compliance wise, for such an undertaking. At the outset, Plaintiff's facility and staff were tasked with the purchase and production of the chemo medicines and admixtures as needed and their delivery to two oncology infusion sites on a daily basis, including weekends. FA was to contribute towards the purchase of chemo drugs. When he could not come up with the funds, he invited Ayo Gbadebo to join the venture. Plaintiff did not want that because Ayo was not known to Plaintiff. Rather Plaintiff advised that a proper way to go will be if FA partnered with Ayo. Plaintiff was not privy to their partnership arrangement and did not take anything (including monies) from Ayo.

33. Plaintiff's company worked and produced work in partnership with a company that FA presented to work with us on the project. Initially, FA and his friend gave $25,000.00 which used quickly. Plaintiff also contributed more than $200,000 worth of medicines on credit whilst they (FA and Ayo) gave an additional $75,000 when Plaintiff reached his credit limit. In addition, there are some medications that are only sold to oncology practices. The oncology office provided about $100,000 worth of such medicines for us to formulate into bags of infusion. In the end the project was not profitable because of several claim denials by insurance companies, under compensations and refusal of the oncology office to remit about $274,000 in payments for products supplied to his patients (information made available to attorneys from deposition of the clinic billing staff). Whatever payments received went towards paying for drugs and operating expenses. Documents relating to claim processing was turned over to FA. It is false and defamatory to go to an online publication and cause to be published that Plaintiff defrauded Ayo. To also assert that he knows someone Plaintiff defrauded $250,000 is not only untrue but an attempt to cause injury to reputation via the online publication. They know the truth but will rather tell lies to harass Plaintiff electronically with false accusations intended to cause injury to his businesses and income.

34. The loss sustained by Plaintiff was staggering; It was stipulated in the partnership

agreement drawn up for the project how profit and loss will be treated. Plaintiff does not recall anything about one party paying for the other party's losses. If anything, Plaintiff would have asked for such. Plaintiff is the one who got burned badly. Two drug wholesalers sued for their monies when Plaintiff was unable to pay them in full. Plaintiff company had to retain counsel in both instances. Plaintiff lost his insurance contracts because of payments to the drug company that also doubles as Plaintiff's PBM (Mckesson Corporation); Plaintiff company is still dealing with the debt to Mckesson.

35. In the other case, Plaintiff was unsuited by the drug company because he was found not liable. He had a balance also with one of the attorneys on the case who sued for his balance too. This project put Plaintiff's pharmacy under tremendous stress. That year alone (and for the first time) in between the loss from the project, legal fees and lost opportunities due to little or no cash flow, Plaintiff lost about $400,000 in operating income. It almost bankrupted his business. But for the grace of God and loans from families and friends, Plaintiff is still on the hook with Mckesson.

## SECOND CAUSE OF ACTION

### Violation of 42 U.S. Code § 1985(3): Conspiracy to Interfere with Plaintiff's Rights

### (Against Femi Oyatoogun Dominic)

36. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 35, inclusive, as though set forth in full herein.

37. Defendants conspired to commit Assault and Battery of Plaintiff's family Members in Nigeria with intent to cause emotional distress, property damage and bodily injury.

38. Sometime in May 2020, Plaintiff received a call at work (5969 Dallas Parkway in Plano, TX) from a male Nigerian who identified himself as Personal Assistant (PA) to a popular Nigerian social justice crusader. He said Femi had contacted him and his group to go visit Plaintiff's family with intent to cause physical harm and destroy property. Plaintiff did not know what to make of the new situation. To protect his family, Plaintiff gave the male caller a cell phone number in Nigeria for him to call to discuss any and all issues. He called a family member who is also a government official in Akure, Ondo State. Plaintiff is not sure how the threat was resolved then, but did not hear again from this PA.

39. However, Plaintiff learnt circa April 17, 2021 that indeed Femi, through his friend Abbey Adeoye contacted Mr. Kazeem Ayinde in Nigeria to allege that Plaintiff misappropriated

the seed money he sent to a company he partnered with. It was also alleged that plaintiff sent the money to Nigeria to establish a bakery. They (Femi and Abbey) both falsely claim that the money was traced from Plaintiff's bank account in the US to his half-brother's account in Nigeria.

40. Plaintiff is not sure how any person would have accomplished that task anyway. This was the account and narrative the co-conspirators gave Mr. Kazeem Ayinde, who was tasked with helping them get 'Jungle Justice' in Nigeria. Plaintiff (Plaintiff and his New York based sister) spoke with the Nigerian gentleman, Mr. Ayinde. He detailed how he had gathered intelligence on Plaintiff's half-brother and had sent word to patron of his association (the social justice crusader) to take some decisive action to cause bodily harm and arson. Mr. Ayinde was also going to disrupt and seize people and property at the bakery of Plaintiff's half-brother. He felt it would be the right thing to do and took it upon himself to go all the way because he was told they could not act here in the US because someone did not have legal papers. Fortunately, God did not allow their plan to come to pass. Mr. Ayinde was gracious to send Plaintiff annotated pictures of his mother and half-brother that was sent to him by Mr. Abbey Adeoye, an accomplice of Olufemi Dominic in the US.

41. Plaintiff meets the discriminatory animus in *Griffin v. Breckenridge*, 403 U.S. 88, 102–04 (1971), since Plaintiff and the individuals that are subject to the conspiracy belong to a class of protected persons.

### THIRD CAUSE OF ACTION

#### Equitable Estoppel

42. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 41, inclusive, as though set forth in full herein.

43. Olufemi Oyatoogun Dominic called from the blues one day in 2019 soliciting for help. His wife, Maria Oyatoogun Dominic wanted to enroll in a compounding training class in Houston and needed help with the fees. The Houston based pharmaceutical company was giving associates or employees of pharmacies affiliated with them a $5000 discount off of the fees. They (Femi and Maria) asked if Plaintiff would help - he found out one of my companies is a member of the organization. Plaintiff obliged them, and they got the discount. This statement can be confirmed with the pharmaceutical company.

44. Thereafter he and his wife will called Plaintiff multiple times in a week for

several weeks telling Plaintiff about their plans to relocate to the DFW area from Odessa, TX to start their own pharmacy, Vivmeds Pharmacy in Denton, TX. They consulted on a variety of issues such as

    a. New work space design.

    Plaintiff visited and analyzed the strengths and weaknesses of their space and helped transform their conceptual idea into a new structure of working, queuing system, and interior design, consistent with the structures of pharmaceutical care, compounding and dispensing process. Plaintiff gave them his source for fixtures and engineer to put in the fixtures at my discounted prices. I also helped them manage some of the work in their store.

    b. Trade consultation on the pharmacy application process and equipment needed to run a compounding pharmacy.

    Plaintiff advised them on integrity, safety, reliability and regulatory compliance of their activities, equipment and operations selection and market best practice for pharmaceutic production and trade. During one of Plaintiff's consultation sessions, Plaintiff asked them (Femi and Maria) if they would be interested in some used equipment. They said they are and came to Plaintiff's pharmacies in Plano to select the items. Plaintiff checked the prices of some of them online and Plaintiff agreed on about 40% of the value. Plaintiff also checked on the price of a server with his IT consultant and gave them the price he quoted. In addition, Femi also took some other equipment which Plaintiff gave to him as goodwill, including a pharmacy refrigerator. They took all small equipment with them except a hood, refrigerator which, at his request, were delivered to him by the engineer helping with his work space design. He also purchased a server which is still available for pick up.

    45.    On the partnership issue, Plaintiff spoke about it over the phone and his response was that they had been thinking about asking if Plaintiff will be interested in partnering with them but thought plaintiff would 'blow' them off as being un-serious. Plaintiff agreed he should contribute a lower amount because it was what he wanted to do. All of Plaintiff's conversations were over the phone and probably some text messages as well. Plaintiff's mother or any of his family members were not privy nor involved in those business conversations and interactions. Plaintiff had four pharmacies prior. The fourth (iMedsPlus The I-Lab) had ceased operations

several months before Plaintiff met Femi and Maria. No, Plaintiff could not give what he did not have. Plaintiff offered them a partnership in one of his existing pharmacies – MedicinesPlus Integrative Care LLC (iMedsPlus I Care). The evidence of his payment also shows he paid into the latter and not the former.

46. When Plaintiff started together, Femi and his wife Maria, put out ads and screened pharmacist candidates for a pharmacist in charge position for the pharmacy. The pharmacists engaged as pharmacist-in-charge for the pharmacy are required by law to send their documentation to the State Board of Pharmacy and they did do that. Plaintiff has the records of their submissions to the board. Plaintiff also requested Femi to send in a form to the board of pharmacy listing himself or his wife as an officer of the pharmacy to formalize the relationship. He did so by filling an officer form which he notarized and sent to the Texas state board of pharmacy. The State has a record of his submission for iMedsPlus I Care Pharmacy and not iMedsPlus I-Lab as he claimed in his salacious and injurious piece on saharareporters.com. No, it was not possible, and Plaintiff did not scam him with a non-existent pharmacy and company.

47. He knew all of the statements in paragraph 19a to 21d to be true before sending his malicious and false representation to saharareporters.com with the intention it should be acted on because Saharareporters.com had no knowledge of the facts (and should know better not to publish unsubstantiated facts) to cause injury. The publication and publisher did not attempt to verify the account of co-defendant Olufemi Oyatoogun Dominic with Plaintiff before going to press. This report has been published online by Saharareporters.com and transmitted on twitter (with several retweets), Instagram, facebook. The company Femi joined existed at the relevant period, and it is traditional for the board to list on their website officers of the corporations of pharmacies. Plaintiff (Femi and Plaintiff) both saw his name listed as an officer of the pharmacy on the board of pharmacy website under MedicinesPlus Integrative Care LLC DBA iMedsPlus I-Care. It was the same company that he sent his contribution to, as per the document he attached to his infamous article. He even brought some nutritional hemp supplements to sell in the pharmacy and took pictures of the pharmacy.

48. Then Covid 19 pandemic happened and all was not at ease. During the lockdown period, he called one day and said he was pulling out of the partnership. He had confided that he had been told it would be tough to do so then, and even tougher to recoup anything. Plaintiff told him and he knew that the pharmacy was not profitable yet and that if and any compensation and

or payments can only be done when things improve. Unfortunately, he called again and said he will be returning the used equipment he bought. He said he went online and found them cheaper. It was tough to allow him to do that, but because of existing relationship, he was allowed to do it. He was also told that even though it was not proper, because all used equipment sales are final (especially when they are in good working condition), Plaintiff would work with him. He did not return the ones Plaintiff gave him as goodwill. Plaintiff did make good on my make two payments totaling $4,000 before the sahara reporter publications.

## FOURTH CAUSE OF ACTION

### Assault and Battery

### (Against Olufemi Oyatoogun Dominic)

49. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 48, inclusive, as though set forth in full herein.

50. One early morning (circa March 29, 2020), Femi and his wife, Maria came to Plaintiff's home (6508 Sleepy Spring Dr., Plano, TX). Plaintiff's family was rudely awakened by a constantly ringing door bell and banging on Plaintiff's door. Plaintiff was surprised to see both of them (Femi and his wife, Maria) at his door and inquired what the deal was. They said they wanted to initiate contact with Plaintiff's wife about the business matter. This incident was reported to the Plano police department. Plaintiff were not happy and told them to leave. They refused, and Plaintiff let them know he would be calling the cops. They left. However, Femi proceeded to call Plaintiff's wife on her cell phone. She recorded the conversation. Femi's wife Maria also contacted Plaintiff's wife via LinkedIn and in-boxed her even after Plaintiff said no. They were not friends. Plaintiff has a record of the LinkedIn text from Maria. When Femi and his wife started to harass the Plaintiff's wife via unwanted phone calls and text messages, Plaintiff made a report with the Plano Police department. Plaintiff's wife was contacted by an officer who let her know that Olufemi Oyatoogun Dominic has been told in no uncertain terms that he needs to stop calling or contacting Plaintiff's wife or any family member over a business matter. It was a cease-and-desist warning by the Police. They were also told that if they get any report of a repeat visit to Plaintiff's home or electronic contact with Plaintiff's wife, he (Femi) will be arrested for criminal trespass. Further, he was told that he should go to court if he has any grievances over the business matter. An incident report exists. He continued to contact Plaintiff

family members but changed location and tactics.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against Olufemi Dominic)

51. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 50, inclusive, as though set forth in full herein.

52. Plaintiff was at work (5969 Dallas Parkway, Plano, TX 75093) sometime in April of 2021 when he was contacted by phone call from a Ridwan in Nigeria who claimed to be the son of Alhaji Auxilliary, the Oyo State Park chairman. His true identity has since been revealed as Tosin Oyatoogun, Olufemi Dominic's biological brother. He narrated that the chairman of Osogbo Nurtwu (who Plaintiff was told was Femi's brother and who identified himself as Asiri Eniba - found to be an imposter) was at a meeting in Ibadan, Nigeria with a picture of Plaintiff's Mum in tow and will like to ask Tosin's fathers' permission to go visit and roughen up or perhaps seize Plaintiff's mother. They were also going to attack Plaintiff's siblings at their businesses, places of work and/ or residencies. Tosin said Olufemi Oyatoogun Dominic was the one claiming Plaintiff owe him money and directed them to carry out these acts of terror. Plaintiff was sad and reported the incident to the Plano Police Department.

53. In desperation, and out of fear, Plaintiff spoke with a man whom Tosin aka Ridwan said could help quell the plot. He introduced the man as his father. Tosin's father gave a narrative of how he recognized the face of Plaintiff's mother as that of someone who had helped him in the past. He said he was not going to allow them to cause any harm to Plaintiff's mother. He then requested Plaintiff give him 'something'. Tosin aka Ridwan let Plaintiff know his dad likes cows. Being very grateful, Plaintiff (Plaintiff and his sister) gave money for two cows and also gave Ridwan some money too. Concurrently, Femi continued to contact one of Plaintiff's siblings with false narratives and language that bothered on threats to life and destruction of property.

54. About a week later, still in April, 2021, Plaintiff received another call at work from someone who identified himself again as 'Asiri Eniba'. This was the same person identified earlier as Osogbo Nurtwu chairman and Femi's elder brother. He said Femi had instructed him and his boys to go cause damage at Plaintiff late father's house, (where Plaintiff's late father was buried) at Ode Remo in Ogun State, Nigeria. He said they were prevented from doing anything

in Ibadan and felt the Oyo state chairman had been given money. He requested Plaintiff 'settle' him (give him money) as well or else they will go do a terrible act of violence there and Plaintiff would not like reports from Ode Remo, Nigeria (Plaintiff paternal home town). Out of concern for life and property, Plaintiff gave the thug hired by Femi a number to call to go collect his ransom money. As it turned out, the person who called to arrange for the collection of ransom money was Tosin Oyatoogun, Femi's kid brother. When he realized he had called the cell phone number of a senior special assistant to the Ondo State Governor in Akure, Nigeria, he became very afraid. This is how Plaintiff disrupted their evil domestic terrorist scheme.

55. Dr. Doyin Odebowale caused the Ondo State Police Command to commence investigations into the petition written to the Commissioner of Police, Ondo State. A similar petition exists with the Oyo State Police Command. Tosin Oyatoogun eloped when law enforcement tried to bring him to Justice. The two Nigerian state security agencies have since been involved and have reports of Femi and his brother's activities. Femi, as Plaintiff was told by Ridwan, became very afraid and disturbed. He also contacted the Police authorities in Akure, Ondo State in a bid to make the matter go away. When he could not get his way, he decided to go the Sahara Reporter to turn the table on us and scandalize the Plaintiff family. A legal letter has been sent, on behalf of Plaintiff family members, to Sahara Reporter with copy to the Nigeria Department of State Services. This department committed to forward the letter to its counterpart agency in Washington, DC.

56. On January 3, 2022, The Nigerian Police Force, State headquarters, Akure, Ondo State carried out an operation in the case of attempted kidnapping / demanding with menace and threat to life. Four accomplices of Tosin Oyatooun (Olufemi Oyatoogun Dominic's brother) were arrested and made statements that is on file to the cops. However, Tosin Oyatoogun is reportedly at large and was reported to have slipped out of the country to the UK.

57. Plaintiff sent the Plano police department a detailed report of all of the above except regarding the ongoing investigation in Akure. The Police in Akure, Nigeria have requested that Femi's lawyers should produce Tosin Oyatoogun, so they can take his statement.

## SIXTH CAUSE OF ACTION

### Tort of Another

58. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 57, inclusive, as though set forth in full herein.

59. As a result of the Defendants' tortious conduct described herein, Plaintiff has been forced to protect his interests by bringing this Federal Action against the Defendants, wherein he seeks compensatory damages, punitive damages, injunctive relief to enjoin Defendants to refund the payment already made to Plaintiff, and an award of fees and costs.

60. In prosecuting this Federal Action, Plaintiff has incurred fees, costs, and other expenses. Under the tort of another doctrine, Plaintiff is entitled to recover those expenditures incurred in connection with the Federal Action from the Defendants.

### DEMAND FOR JURY TRIAL

61. Plaintiff hereby Request trial by Jury.

### PRAYER FOR RELIEF

62. As a direct result of Defendants' actions, Plaintiff has suffered emotional distress and is entitled to compensatory and punitive damages in an amount to be proven at trial and not less than $80M dollars.

**WHEREFORE**, plaintiff demands judgment against defendant as follows

a. Awarding compensatory and punitive damages in appropriate amounts against defendants individually and to be determined during trial.
b. Enjoining Sahara reporters Media Group Inc to remove articles about Plaintiff from its website and refrain from publishing or republishing the defamatory statements in the article.
c. Awarding Plaintiff recovery of his cost associated with this action including but not limited to reasonable attorney's fees and expenses and
d. For such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ K Oladotun Oyenug

K OlaDotun Oyenuga, PhD, MSE
drooyenuga@gmail.com
Tel: (631) 948 469

## CERTIFICATE OF SERVICE

I certify that on August 3, 2003, I caused an original copy of Plaintiff Motion For Leave To File Out Of Time to be filed by hand and one electronic copy of that motion to be filed electronically with:

United States District Clerk
United States Courthouse
7940 Preston Road Room 101
Plano, Texas 75024

The undersigned further certifies that a true and correct copy of the foregoing document was served upon all parties via electronic mail and/or the electronic filing system on this 3rd day of August, 2023 as follows:

Sahara Reporters Media
Group Inc.
146 West **29th Street** Ste 7e,
**New York, NY** 10001
Phone: 1 (646) 559-6640
Email: editor@saharareporters.com

Omoyele Sowore
146 West 29th Street, STE 7E
New York, NY 10001
Phone: (646) 559 6640
Email: editor@saharareporters.com

Olufemi Oluseun Dominic
3303 Unicorn Lake Blvd Ste. 280,
Denton, TX 76210
Phone: (917) 517 0374
Email: femi.domiic@precilitix.com

Ayokunle James Gbadebo
11339 Las Polamas Dr
Frisco, TX 75033 and
730 W EXCHANGE PARKWAY
Allen, TX 75013
(602) 284 -6127
ayokunbo@yahoo.com
***Defendants***

/s/ *K. OLADOTUN OYENUGA*
K OLADOTUN OYENUGA, PHD, MSE

## COPY CERTIFICATION

I certify that the electronic version of Plaintiff's MOTION FOR LEAVE TO FILE OUT OF TIME filed by electronic mail with the District Clerk is a true and accurate copy of the paper original and that a paper copy with original signature has been filed with the district clerk on this day.

Dated August 3, 2003

/s/ *K. OLADOTUN OYENUGA*
K OLADOTUN OYENUGA, PHD, MSE